FILED
NOV 14 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

**CIVIL ACTION NO. 16-151-HRW**

**LOUISA LODGING, LLC,**                                              **PLAINTIFF,**

v.                **MEMORANDUM OPINION AND ORDER**

**FALLS CREEK, INC.**                                          **DEFENDANT.**

This matter is before the Court upon Plaintiff Louisa Lodging, LLC's Motion for Partial Summary Judgment [Docket No. 44] and Defendant Falls Creek, Inc.'s Motion for Summary Judgment [Docket No. 54]. The motions have been fully briefed by the parties [Docket Nos. 44-1, 54-1, 55, 56, 59 and 65]. For the reasons set forth herein, the Court finds that Defendant is entitled to judgment as a matter of law.

**I.**

This cases arises from an almost twenty year lease of property in Louisa, Kentucky.

**A.**     **The Lease**

Falls Creek, Inc. is a Kentucky entity that develops land at the intersection of U.S. Route 23 and Kentucky Route 3 in Louisa, Kentucky. Louisa Lodging is a South Dakota Limited Liability Company. In early 1997, the parties entered into a lease. [Lease, Docket 1-3]. By the terms of the Lease, Louisa Lodging agreed to lease a portion of Falls Creek's property for a term of forty years for the purpose of constructing and operating a Super 8 Motel. *Id.* at p.1. According to Falls Creek, this relationship continued amicably for two decades.

On June 2, 2016, Joel W. Albrecht, Treasurer of Louisa Lodging, LLC, sent a

letter to Mark Clevenger of Falls Creek advising him that Louisa Lodging had entered into a Purchase and Sales Agreement with three individuals prospective purchasers for the Super 8 Motel. [Docket No. 61-9]. Those individuals were identified as Pramod Kumar Patel, Nilesh Patel and Vipul Parmar.

The potential sale of the motel implicated several provisions of the Lease. First, the Lease states that Louisa Lodging "covenants and agrees that it will not sell, assign, sublease, mortgage, pledge or otherwise transfer or encumber…this Lease…without having first obtained the written consent of" Falls Creek. [Docket No. 1-3, at p. 4].

The Lease also provides that Falls Creek has the discretion to approve or disapprove any potential assignment of Louisa Lodging's interest. *Id.*

The Lease requires Louisa Lodging to provide Falls Creek with any requested information to assist it with its evaluation of any potential assignee:

> [Falls Creek] shall thereafter have at least sixty (60) days time **to conduct an examination of the purchaser's credit standing, financial condition, business suitability to function as a lessee of [Falls Creek]** and to evaluate the proposed sale of [Louisa Lodging's] business. In this respect, **[Louisa Lodging] and purchaser(s) shall provide [Falls Creek] with all information as [Falls Creek] requests for purposes of making its examination of purchaser's credit standing.**

[Docket No. 1-3](emphasis added).

The Lease also provides that if it is Falls Creek's "opinion, based upon objective and accepted business practices, such **person does not have sufficient credit standing or business experience** to function as a tenant in the manner required by this Agreement, then [Falls Creek] shall notify [Louisa Lodging] in writing of its opinion

2

and **may refuse to permit the contemplated sale**". *Id.* at p. 6 (emphasis added).

Further, per the express terms of the Lease, "[Falls Creek] shall **not be held liable for any losses caused [Louisa Lodging] by such disapproval or conditioned approval.**" *Id.* at p. 6. (emphasis added).

Finally, under the Lease, Louisa Lodging agreed to remain as a guarantor under the Lease. The Lease specifies that Louisa Lodging "shall remain fully liable for all of it's [sic] obligations hereunder, notwithstanding any such assignment or sublease." *Id.* at p. 5.

### B.     The potential sale and assignment.

Shortly after being notified of the potential sale, by letter dated June 16, 2016, Clevenger sought clarification of the proposed transaction and certain financial information regarding the potential buyers, including certified financial statements of the purchasers, credit check and possible background check on each potential owner, detailed information concerning the experience of the proposed purchasers in operating motel properties and federal tax returns of the proposed purchasers for the past three years.. [Docket No. 61-10].

Louisa Lodging sent several documents to Clevenger. Clevenger, however, felt that information provided was incomplete or otherwise inadequate. [Docket No. 61-12]. Moreover, despite Louisa Lodging agreeing to guaranty the assignees, it informed Falls Creek that all of its assets would be liquidated after assignment, thus, according to Clevenger, rendering any guaranty of Louisa Lodging effectively meaningless. [Docket No. 61-11].

Falls Creek expressed its concern to Louisa Lodging regarding the lack of information on the proposed assignees, and stated that the information provided showed that the "proposed acquirer may not have sufficient credit standing or business experience; although we do not have

3

the detailed information as to the purchaser's credit worthiness and experience to finalize that decision." [Docket No. 61-13]. However, as a nod to the longstanding relationship, Falls Creek offered a conditional acceptance of the assignment and stated that "with an acceptable guarantor their [Louisa Lodging's] proposed buyers could be approved very quickly."*Id.*

No further information regarding the potential assignees was provided by Louisa Lodging. Nor did Louisa Lodging conduct any due diligence of its own into the prospective purchasers' ability to operate the hotel, as Falls Creek requested. Albrecht never spoke with the three potential purchasers; he merely "scanned" through their financial information. [Deposition of Joel Albrecht, Docket No. 61-2, p. 67].

On October 4, 2016, Louisa Lodging provided a "Conditional Loan Commitment" to support the prospective purchasers creditworthiness, the terms of which, despite the admitted lease obligation, specifically included a provision requiring Louisa Lodging be released "from all obligations pursuant to the existing Ground Lease" contrary to the terms of Lease and Falls Creek's repeated requests that Louisa Lodging abide by the terms of the Lease by providing a guaranty. [Docket No. 61-14]. As stated *supra,* such a condition was not only unacceptable to Falls Creek, but violated the terms of the Lease, which required that Louisa Lodging remain obligated under any assignment.

Yet, a few days later, by letter from Clevenger to Albrecht, Falls Creek offered to accept the current proposed purchasers with a guarantee by Louisa Lodging, and again outlined its concerns and reasons for its conditional approval, to-wit, that the "cash allegedly held by the purchasers is unverified"; the amount of assets compared with the amounts to be placed as down payment leave a small amount for operations of the Motel; the fact that a mortgage lien would be

4

placed on the facility and the previous net income for the years being so low that it would not cover the debt; and the claims that the potential purchasers intend to increase profitability but no specifics as to how this is to be accomplished. [Docket No. 61-15].

Louisa Lodging did not respond directly to this offer of conditional acceptance. Instead, Louisa Lodging sent Falls Creek with a Renewed Conditional Loan Commitment issued by Citizens Bank of Kentucky for the potential sale. [Docket No.; 61-16]. For the first time, this revised Loan Commitment removed any language regarding the release of Louisa Lodging, but provided that the loan was now being extended to an unknown and previously undisclosed purchaser, Bhoomi, LLC, not the three individuals previously identified as potential purchasers.

Pursuant to the terms of the Lease, Falls Creek requested information regarding Bhoomi, LLC. [Docket No. 61-17]. Louisa Lodging informed Falls Creek that Bhoomi, LLC was "an operating company with no assets," and provided no documentary or otherwise verifiable financial information. *Id.*

Incredibly, during his deposition, Albrecht testified that he had no knowledge whatsoever with regard to Bhoomi, LLC.

> Q. At any point during your discussions on the sale of this 2016 lease, or the assignment of it, had you heard of Bhoomi, LLC before?
> A. **No.**
>
> Q. Was Falls Creek ever provided with any financial information regarding Bhoomi, LLC?
> A. **Not to my knowledge.** I don't know.
>
> Q. Do you have any idea what financial information Bhoomi, LLC provided to Citizens Bank of Kentucky?
> A. **No.**

5

> Q. Do you have any understanding of the three potential purchasers Mr. Patel, Patel, and Parmar - - what their relationship was with Bhoomi, LLC?
> A. **No.**
>
> Q. Do you know where Bhoomi, LLC is incorporated?
> A. **No.**
>
> Q. Do you know who the principals of it are?
> A. **No, I don't.**

[Deposition of Joel Albrecht, Docket No. 61-2, p. 45-47] (emphasis added).

Notwithstanding Falls Creek's requests for information or its effort to try to work through the deal, Louisa Lodging did not provide any documents or meaningfully respond to Fall Creek's offers of conditional approval.

### C.     The lawsuit.

Less than a month later, Louisa Lodging filed this lawsuit in Lawrence Circuit Court. In its Complaint, it alleged that Falls Creek breached the Lease by wrongfully refusing to consent of the assignment of the Lease. [Docket No. 1-1]. Specifically, Plaintiff seeks "a Declaratory Judgment declaring that the Defendant, Falls Creek, is obligated to consent to an Assignment of the Lease." *Id.* Plaintiff also claims it "is entitled to recover damages of and from the Defendant, Falls Creek, for its refusal to consent to the proposed Assignment and otherwise its breach of the parties' Lease".

Plaintiff then Amended its Complaint to add what purports to to be retaliation claims under 42 U.S.C. Section 1981 and Section 1982 based on the national origin of the potential motel purchasers, Mr. Patel, Mr. Patel and Mr. Parmar.

6

The matter was removed to this Court pursuant t 42 U.S.C. §§ 1331 and 1332.

Falls Creek filed a Motion to Dismiss seeking the partial dismissal of Plaintiff's Amended Complaint as the alleged discrimination by Falls Creek, national origin discrimination, is not cognizable as a matter of law under either 42 U.S.C. Section 1981 or Section 1982 as allegations of discrimination based upon national origin are not actionable under either section. This Court sustained the motion.

Thus, the only claim which remains is breach of contract.

Both parties seek summary judgment.

## II.

Under Federal Rule of Civil Procedure 56( c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When confronted with a properly-supported motion for summary judgment, the

nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The standard of review for cross-motions of summary judgment does not differ from the standard applied when only one party files a motion. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted). Thus, when the court reviews cross-motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506-07 (6th Cir.2003).

### III.

Plaintiff asserts that by refusing to consent to the assignment of the Lease, Falls Creak breached the contract between them, a.k.a the Lease.

As this is a diversity action, Kentucky contract law governs. *Erie v. Tompkins*, 304 U.S.

8

64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Associated Indus. of Ky., Inc. v. U.S. Liab. Ins. Grp.*, 531 F.3d 462, 465 (6th Cir. 2008) (applying Kentucky law in a diversity action concerning the interpretation of an insurance contract).

In Kentucky, "the first step in cases involving contract interpretation is determining whether the contested provisions are ambiguous *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (internal alteration and quotations omitted) ). "In the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal alterations and quotations omitted).

Louisa Lodging does not argue that the contract is ambiguous; nor can it credibly argue the same in the face of the clear terms of the Lease. Rather, it appears that Louisa Lodging misconstrues the terms of the Lease. Nowhere in the Lease is it stated that Falls Creek is **obligated** to consent to a sale or assignment. Rather, the Lease provides that Falls Creek has **discretion** to approve or conditionally approve an assignment, if, in Falls Creek's opinion, the assignee would be able to perform as a tenant under the Lease. [Docket No. 1-3, pp. 5-6]. Falls Creek's ability to consent to an assignment of the Lease is predicated upon its opportunity to review and evaluate potential assignees, and, in reviewing the proposed assignee, to evaluate the assignee's credit standing, financial condition, and business sustainability as a lessee. *Id.* The plain, clear terms of the Lease undercut any argument that Falls Creek was required to consent to an assignment of the Lease.

Moreover, the undisputed facts establish that if any breach occurred, it was by the hands of Louisa Lodging. It is undisputed that under the Lease, Falls Creek has the right to examine the potential assignees, and that Louisa Lodging and any potential purchaser was required to provide Falls Creek with "all information request[ed] for purposes of making its examination of the purchaser's credit standing." [Docket No. 1-3]. It is also undisputed that Falls Creek requested information to evaluate not only the three initial proposed assignees, but also the final assignee Bhoomi, LLC. It is also undisputed that no financial information was provided regarding Bhoomi, LLC and incomplete information as to the three individuals. Rather than put forth evidence of Falls Creek's failings under the Lease, Louisa Lodging has demonstrated its own violations of the Lease.

Plaintiff devotes much of its briefing to the information it provided to Falls Creek regarding Pramod Kumar Patel, Nilesh Patel, and Vipul Parmar and Falls Creek's unreasonable objections to that information. However, it is entirely irrelevant whether Louisa Lodging provided "ample and reasonable documentation" for Pramod Kumar Patel, Nilesh Patel, and Vipul Parmar because they were not the final assignee under the Lease Agreement. Here, the only relevant fact is whether Louisa Lodging provided documentation pertaining to the final assignee, Bhoomi, LLC, which despite Falls Creek's requests, it failed to supply. Indeed, Albrecht testified that, under the terms of the Lease, Falls Creek was entitled to financial information regarding Bhoomi, LLC.

> Q. Would you agree with me that under the terms of the 1997ground lease, that Falls Creek was entitled to financial information associated with Bhoomi, LLC?

10

A. **Yes.**

[Docket No. 61-2, p. 48] (emphasis added).

Per the unambiguous language of the Lease and giving the same its plain and ordinary meaning, the Lease provides that: (1) Falls Creek has the express right to evaluate potential assignees; (2) it is Louisa's obligation to provide Falls Creek with any requested information to assist with the evaluation; (3) that Falls Creek would provide either conditional approval or disapproval of any potential assignee; and (4) that Falls Creek is relieved of any liability with respect to damages resulting from the conditional approval or disapproval of any assignment. Louisa Lodging has not presented any evidence, much less disputed material facts, that these conditions were beached by Falls Creek. There was no breach and, therefore, no damages.

## IV.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Louisa Lodging , LLC's Motion for Partial Summary Judgment [Docket No. 44] be **OVERRULED** and Defendant Falls Creek, Inc.'s Motion for Summary Judgment [Docket No. 54] be **SUSTAINED**.

This 14th day of November, 2018.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge

11